UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 12-50138-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND** |
| vs. | ) | **RECOMMENDATION ON** |
| | ) | **DEFENDANT'S MOTION TO** |
| WESLEY WADE RUNNING SHIELD, | ) | **SUPPRESS** |
| | ) | [DOCKET NO. 23] |
| Defendant. | ) | |
| | ) | |

## INTRODUCTION

Defendant Wesley Wade Running Shield is before the court on an
indictment charging him with being a felon in possession of a firearm and
ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He moves the
court to suppress the evidence seized as a result of the execution of a search
warrant issued on June 1, 2012, and executed on June 6, 2012. See Docket
No. 23. The government resists the motion. See Docket No. 25. The district
court, the Honorable Jeffrey L. Viken, referred this motion to this magistrate
judge for a recommended disposition pursuant to the court's standing order
and 28 U.S.C. § 636(b)(1)(B). The following is this court's recommended
disposition.

**FACTS**

Both parties agreed that this court should determine the issues raised in Mr. Running Shield's motion on the briefs with reference only to the search warrant and its accompanying affidavit. Accordingly, no evidentiary hearing was held.

Special Agent Justin M. Hooper with the Bureau of Indian Affairs, Office of Justice Services, Pine Ridge Agency, submitted to this court an affidavit in support of his request for a search warrant on June 1, 2012. That affidavit set forth the following facts.

On May 8, 2012, a female who is named in the affidavit, but whose name is not published herein for privacy reasons and will be referred to as "X," contacted BIA Special Agent Sheri Salazar. See Docket No. 26-2, page 1, ¶ 3. X reported to Agent Salazar that Mr. Running Shield had sexually assaulted her on September 12, 2011. Id. X further reported that Mr. Running Shield and another woman, also named in the affidavit, but who will be referred to herein as "M," had a video of that sexual assault. Id.

X told Agent Salazar that Mr. Running Shield and M were distributing the video of Running Shield's sexual assault of X via the internet and mobile phones. Id. X said that this sexual assault video would be found on the phones of both Mr. Running Shield and M. Id. at page 2. X told Agent Salazar that Mr. Running Shield and M were distributing the sexual assault video in an

attempt to intimidate X so that she would not report that Mr. Running Shield, a convicted felon, possessed three firearms.  Id.

X described having seen these three firearms in the home that Mr. Running Shield shared with his mother.  Id.  X said that the firearms were stowed in a crawl space near the bathroom in the Running Shield home.  Id. X could not recall the make or model of any of the three firearms.  Id.

X also told Agent Salazar that the Running Shields distribute marijuana out of the home Mr. Running Shield lived in with his mother.  Id.  X had observed the marijuana to be stored in the same crawl space where she observed the firearms being stored.  Id.

X told Agent Salazar that she had not been in the Running Shield home since September, 2011.  Id.  She described the house Mr. Running Shield lived in with his mother as being blue in color, with tires placed on the ground leading up to the sidewalk.  Id.  She stated that M owned a purple van which was usually parked in the driveway of the home.  Id.  X told Agent Salazar that she was not certain of the house number of the Running Shield residence, but she thought it might be "34."  Id.

Agent Hooper stated in his affidavit that he checked Mr. Running Shield's criminal record and confirmed that he was convicted of a felony assault on a law enforcement officer in Nebraska in 2008, and a felony first degree burglary in 2005.  Id. at page 2, ¶ 4.  A copy of Mr. Running Shield's

criminal background was attached to Agent Hooper's affidavit.  Id.; see also

Docket No. 26-2 at pages 5-24.  Although Agent Hooper did not identify in his

affidavit the jurisdiction of the first degree burglary conviction, the attached

records indicate that Mr. Running Shield was convicted of that charge in the

District of South Dakota, Western Division.  See Docket No. 26-2 at pages 5-

24.

Agent Hooper also recited the facts gleaned from reading the case of

United States v. Water.  United States v. Water, 413 F.3d 812 (8th Cir. 2005);

see also Docket No. 26-2, page 2, ¶ 5.  In Water, the defendant was convicted of

second degree murder for a shooting that occurred in House 33 of the

Northridge Housing Development in Pine Ridge, South Dakota.  Water, 413

F.3d at 814.  After the shooting, the defendant ran to House 32 and gave the

gun to Mr. Running Shield, who told the defendant he would dispose of or hide

the gun.  Id. at 815, 820.  Authorities later retrieved the gun.  Id. at 816.  In

the court's opinion, Mr. Running Shield was described as living in House 32 of

the Northridge Housing Development along with his mother, his twin brother,

M, and M's son.  Id. at 815.  Agent Hooper attached a copy of the Water

opinion to his affidavit in support of his request for a search warrant.  See

Docket No. 26-2, pages 25-34.

Agent Hooper then stated that he personally observed House 32 in the

Northridge Housing Development in Pine Ridge, South Dakota.  Id. at page 3,

¶ 6.  He described his personal observation of that home as follows:  blue in color, with white trim at the bottom, and a tin or steel roof.  Id.  He further stated that the number "32" is affixed to the upper right of the front door of the house.  Id.  Agent Hooper averred that House 32 had tires leading up to the sidewalk and a metal swing set in the southwest side of the front yard.  Id.  Agent Hooper then attached photographs of House 32 to his affidavit.  Id.; see also Docket No. 26-2, pages 35-36.  Agent Hooper stated that the appearance of House 32 matched the description of the house given by X.  Id. at page 3, ¶ 6.  Finally, Agent Hooper stated that his own independent investigation as well as that of other law enforcement agents confirmed that House 32 was Mr. Running Shield's residence.  Id.

Agent Hooper then requested that a search warrant be issued for House 32.  Id. at ¶ 7.  He asked for permission to search for the following evidence: any firearms, any items related to the use or sale of illegal narcotics, cell phones, or computers located at House 32.  Id.

Law enforcement officers executed the search warrant on June 6, 2012. They found, among other things, three firearms:  a 20-gauge shotgun, a .22 caliber pistol with the serial number scratched off, and a .380 caliber automatic pistol.   See Docket No. 26-1, page 3-4.  They also found 47 rounds of .380 caliber ammunition in a box, 15 cell phones (including six cell phones together in a bag), six rolled marijuana joints, a seventh partially-smoked

marijuana joint, loose marijuana in a baggie, a digital scale, tin foil squares, additional used tin foil squares with burn marks on them, a rolled up dollar bill, and photographs depicting drug activity. Id.

Mr. Running Shield now moves to suppress the evidence seized pursuant to the search warrant, arguing that there was no probable cause in support of the search warrant. See Docket Nos. 23, 24. Mr. Running Shield specifically argues that the information provided by X was unreliable, not corroborated, and stale. Id. The government resists Mr. Running Shield's motion in all respects. See Docket No. 25. The government also argues that, even if probable cause was lacking in support of the search warrant, the court should apply the Leon good faith exception and refuse to suppress the evidence seized pursuant to the warrant. Id.[1]

_____

[1]In addition, Mr. Running Shield asserts in his motion that the affidavit was defective in that it was not particular enough, not specific enough, and too broad. Also in his motion, Mr. Running Shield mentions suppression of statements elicited from him during or subsequent to the search pursuant to Miranda v. Arizona. See Docket No. 23, page 2 (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). However, in his supporting brief, Mr. Running Shield does not mention any statements, does not mention any facts surrounding the obtaining of any statements, discusses no law pertaining to the suppression of any statements, and never discusses the broadness, particularity, or specificity issues. See Docket No. 24. Instead, Mr. Running Shield's brief argues only the issues pertaining to whether there was probable cause to support the search warrant. Id. It is possible that this reference to "statements" and to broadness/particularity/specificity is a part of some previously-filed boilerplate motion that was inadvertently not culled from the motion before it was filed. In any case, the government also does not discuss broadness/particularity/specificity nor does it mention any statements or any grounds, independent of the probable cause issue, which would affect the admissibility of any statements. See Docket No. 25.

## DISCUSSION

### A. General Fourth Amendment Principles Applicable to Search Warrants

The Fourth Amendment to the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . ." U.S. CONST. amend. IV. "Generally, to search a private place, person, or effect, law enforcement must obtain a warrant supported by probable cause from a judicial officer." United States v. Sanders, 341 F.3d 809, 818 (8th Cir. 2003) (citing Katz v. United States, 389 U.S. 347, 357 (1967)). The home is at the center of the Fourth Amendment's protections for it is the "physical entry of the home [that] is the chief evil against which the wording of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585-86 (1980) (quoting United States v. United States District Court, 407 U.S. 297, 313 (1972)).

---

The court concludes that the sole ground urged by Mr. Running Shield for the suppression of any evidence is the purported invalidity of the search warrant due to lack of probable cause. As such, the court does not address any other grounds which might affect the admissibility of evidence including statements from Mr. Running Shield, if in fact such statements exist. In addition, the court notes that the district court has instructed the parties that any motions must be "accompanied by a reasoned memorandum setting forth the precise issues to be considered by the court, together with an explanation of the relevant law to the particular facts of the case." See Docket No. 15, page 2, ¶ 2. If Mr. Running Shield intended to raise any independent argument for the suppression of his statements or if he intended to raise the broadness/particularity/specificity arguments, he has failed to abide by the district court's order by failing to explain the law and the facts applicable to suppression on these grounds.

The main motivation for the adoption of the Fourth Amendment by the founding fathers was the use of the hated "general warrants" by the British. See Payton, 445 U.S. at 583-84. Under a "general warrant," British customs officials had blanket authority to search whenever and wherever they pleased to find any goods that had been imported without paying British taxes on the imports. Id. at 583, n.21. The remedy against the general warrant that was embodied in the Fourth Amendment was to require that any search warrant must be particular, and that it must be supported by probable cause. Id. at 584.

Much has been written about what constitutes "probable cause." "If an affidavit in support of a search warrant 'sets forth sufficient facts to lead a prudent person to believe that there is a "fair probability that contraband or evidence of a crime will be found in a particular place," ' probable cause to issue the warrant has been established." United States v. Grant, 490 F.3d 627, 631 (8th Cir. 2007) (citing United States v. Warford, 439 F.3d 836, 841 (8th Cir. 2006) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983))). "Probable cause requires only a showing of fair probability, not hard certainties." United States v. Hudspeth, 525 F.3d 667, 676 (8th Cir. 2008). Whether a search warrant is supported by probable cause is to be determined by considering the totality of the circumstances. Grant, 490 F.3d at 631. The issuing judge's resolution of the issue of probable cause should be paid "great deference by

reviewing courts." Id. at 631-32 (quoting Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969))).

Reviewing courts examine the sufficiency of an affidavit in support of a search warrant using "common sense" and not using a "hypertechnical" approach. Grant, 490 F.3d at 632 (citing United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (quoting United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993)). "Where there is no evidentiary hearing before the magistrate judge, the probable cause determination must be based upon 'only that information which is found within the four corners of the affidavit.' " Hudspeth, 525 F.3d at 674 (quoting United States v. Olvey, 437 F.3d 804, 807 (8th Cir. 2006)).

## B.    Application of the Law to the Search Warrant Affidavit in This Case

Mr. Running Shield makes a number of arguments as to why he believes the search warrant in this case was not supported by probable cause. The court addresses each argument in turn.

### 1.    X's Reciting of the Wrong House Number

When X met with Agent Salazar, she stated that she was not sure of the house number on Mr. Running Shield's home, but she thought it might be number "34." In fact, X was wrong. The number on Mr. Running Shield's house was "32," not "34."

"A minor clerical error does not invalidate the search warrant." Hudspeth, 525 F.3d at 675 n.3 (citing United States v. Thomas, 263 F.3d 805,

9

808-809 (8th Cir. 2001); <u>United States v. Carlson</u>, 697 F.2d 231, 238 (8th Cir. 1983)). In <u>Hudspeth</u>, the affidavit recited a person's surname as "Burton" when in actuality the witness' name was "Bunch." <u>Id.</u> The court held that this error was not sufficient to invalidate the search warrant. <u>Id.</u> Thus, even if Agent Hooper had mistakenly asserted in the search warrant that Mr. Running Shield lived at house number "34," this would not have been enough to invalidate the warrant. <u>See also</u> <u>United States v. Palega</u>, 556 F.3d 709, 713-14 (8th Cir. 2009) (mistake in the search warrant asserting that home to be searched was owned by "Morris Palega, also known as Q," when in fact home was owned by "Q" Palega (aka Ekueta Palega, not "Morris") would not invalidate otherwise valid search warrant).

However, Agent Hooper did not rely solely on X's guess as to the house number on Mr. Running Shield's home. Instead, Agent Hooper stated that, from his own personal knowledge, he knew that Mr. Running Shield lived at house number "32." In addition, he asserted that other law enforcement officers familiar with Mr. Running Shield agreed with Agent Hooper that "House 32" was Mr. Running Shield's home. In addition, Agent Hooper provided a physical description of the home and photographs of the home, both of which coincided with X's description and both of which clearly indicated the right house number was "32." Finally, Agent Hooper supplied additional confirmation as to the house number Mr. Running Shield lived at by citing to

and providing a copy of the Eighth Circuit's decision in <u>United States v. Water</u>.

Clearly, X's uncertainty as to Mr. Running Shield's house number does not

invalidate the search warrant where the correct house number was supplied by

Agent Hooper and where he supplied several sources to corroborate the correct

information.

## 2.     Whether X Was a Reliable Informant

Mr. Running Shield also argues that X was not a reliable informant.  He

points to her uncertainty about the house number of Mr. Running Shield's

residence, as noted above.  In addition, he argues that the information she

provided was devoid of details.  He argues that X did not provide any details of

the sexual assault she said she suffered at Mr. Running Shield's hands.  She

did not provide any witnesses to the assault.  She did not provide a copy of the

video she said Mr. Running Shield and M were distributing.

When search warrant affidavits are based upon information supplied by

informants, the key question is whether such information is reliable.  <u>Williams</u>,

10 F.3d at 593.

> Information may be sufficiently reliable to support a probable
> cause finding if the person providing the information has a track
> record of supplying reliable information, or if it is corroborated by
> independent evidence.  If information from an informant is shown
> to be reliable because of independent corroboration, then it is a
> permissible inference that the informant is reliable and that
> therefore other information that the informant provides, though
> uncorroborated, is also reliable.

Id. (citing Gates, 462 U.S. at 233-34; Draper v. United States, 358 U.S. 307, 313 (1959)).

Thus, an informant is considered to be reliable and credible if the supplied information is at least partially corroborated by other sources. See United States v. Humphreys, 982 F.2d 254, 259 (8th Cir. 1992); see also United States v. Murphy, 69 F.3d 237, 240 (8th Cir. 1995). Probable cause may be found, for example, when the information supplied by one informant is consistent with specific details provided by a second, independent informant. United States v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998). Thus, reciprocal corroboration may render informant information reliable and credible enough to support a finding of probable cause. Fulgham, 143 F.3d at 401; United States v. Nieman, 520 F.3d 834, 839-40 (8th Cir. 2008).

Although the credibility and reliability of informants are important considerations in the probable cause inquiry, "they are not 'separate and independent requirements to be rigidly exacted in every case.' " United States v. Tyler, 238 F.3d 1036, 1039 (quoting Gates, 462 U.S. at 230)). That is, an informant's statements must be weighed within the totality of the circumstances. Tyler, 238 F.3d at 1039. In addition, probable cause may be established by the observations of law enforcement and by circumstantial evidence. United States v. Wells, 223 F.3d 835, 839 (8th Cir. 2000).

An important consideration in establishing the credibility and reliability of an informant is whether law enforcement had the opportunity to meet personally with the informant to assess his credibility and whether the informant's information is based on first-hand knowledge rather than rumor or innuendo.  Nieman, 520 F.3d at 839-40; see also Wells, 223 F.3d at 839 (court noted that police must engage in suitable corroboration of the informant's information if the informant's reputation cannot be assessed because the informant is anonymous); United States v. Robertson, 39 F.3d 891, 893 (8th Cir. 1994) (court noted that "there is an inherent indicia of reliability in the richness and detail of first hand observation" by an informant and that the ability of police to question the informant face-to-face gives greater weight to the police's decision to rely on the informant's first-hand observations).

The Eighth Circuit addressed the issue of confidential informants in United States v. Tyler, 238 F.3d at 1039.  In Tyler, the defendant pled guilty to two counts of possession of crack cocaine with the intent to distribute after police executed a search warrant and found evidence of drugs.  Id. at 1038. On appeal, the defendant argued that this evidence should have been suppressed because the underlying search warrant lacked probable cause.  Id. The defendant specifically challenged the credibility and reliability of the information supplied to law enforcement by a drug offender-turned-police-

informant because the informant was not known previously to the police as a reliable source of information.  Id.

The court rejected the defendant's argument, stating that the information supplied by the informant had been independently verified by the police, in part through a controlled buy of cocaine from the defendant.  Id. at 1039.  The court noted that it "strongly endorsed the use of corroboration as a method of confirming the reliability of the information given to police," and "[e]ven 'the corroboration of minor, innocent details can suffice to establish probable cause.' "  Id. (quoting United States v. Ramos, 818 F.2d 1392, 1397 n.7 (8th Cir. 1987)).

In United States v. Murphy, a police investigator spoke face-to-face to an anonymous informant who said that Murphy had recently been released from prison and was in possession of a .22 caliber pistol with a silencer, a 9mm fully automatic rifle, and three fully automatic AK 47 rifles.  Murphy, 69 F.3d at 239-40.  The investigator to whom the informant spoke did not know or recognize the informant.  Id.  The informant gave the officer Murphy's home address.  Id.  The officer then confirmed Murphy's home address and confirmed that he had recently been released from prison where he had served a sentence for a murder conviction.  Id.  The informant also told the investigator that Murphy was threatening to kill a Jew.  Id. at 240.  The informant was reluctant

to give his name because he feared for his life.  Id.  A search warrant was issued based upon this information.  Id.

The Eighth Circuit affirmed the district court's denial of Murphy's motion to suppress based upon the alleged lack of probable cause in the affidavit.  Id. at 240-41.  The court stated that the police investigator's independent corroboration of Murphy's release from the penitentiary and of his address "both provided assurances of the informant's reliability."  Id. at 240.

Murphy argued that the investigator's statement in the affidavit that he had "recently" been released from prison was false because he had in fact been released in 1992.  Id. at 241 (the district court's docket indicates that Murphy was charged following the search of his home on July 19, 1994, which would have been approximately two years after his release from prison).  The court characterized this attack on the affidavit as "frivolous," because the salient fact was not how long ago Murphy had been released from prison, but rather the fact that he was a convicted felon and, as such, was prohibited from possessing a gun.  Id.

Here, the facts relayed by X to Agent Salazar strongly resemble the facts relayed by the informant in Murphy.  X told Agent Salazar that Mr. Running Shield had three guns, that he hid them in a crawl space near the bathroom, and that he was a convicted felon.  X also gave a detailed description of

Mr. Running Shield's residence as well as what she thought was the house number.

Agent Hooper independently verified several aspects of X's statement, which provides the necessary corroboration to make X's information reliable. First, Agent Hooper verified the fact that Mr. Running Shield was, in fact, a convicted felon two times over. Second, Agent Hooper verified the description and correct address of Mr. Running Shield's residence through multiple sources. Finally, Agent Hooper provided a copy of the Eighth Circuit opinion in United States v. Water, wherein the court recited the fact that the defendant in that murder case gave his weapon, a firearm, to Mr. Running Shield who assured the defendant that he would hide the gun or dispose of it for him. Water, 413 F.3d at 815. This, at least, shows that possession of a firearm by Mr. Running Shield is not entirely out of character.

In addition, although this court does not recite the informant's name herein, X did give her name to Agent Salazar and met face-to-face with Agent Salazar. The Eighth Circuit has held that whether law enforcement had the opportunity to meet personally with the informant to assess her credibility is an important factor. Nieman, 520 F.3d at 839-40. Also, X's information was not rumor, innuendo, or second-hand information–it was information she had observed first-hand herself. Again, this has been found to be an important factor in determining reliability of an informant. Robertson, 39 F.3d at 893.

Finally, the distribution of the video of the sexual assault on X was the event that brought X to Agent Salazar, and the rationale for why Mr. Running Shield was distributing the video was to keep X from reporting that he possessed firearms. This tends to support Agent Hooper's reasonable belief that Mr. Running Shield still had the firearms in his possession–otherwise there would be no need to attempt to "keep X in line" through intimidation.

Mr. Running Shield argues that the information provided by X as to the sexual assault, the video of that event, and any alleged drug dealing was never corroborated and was too lacking in specificity to provide probable cause. The court rejects this attack on Agent Hooper's affidavit. The affidavit was required to show probable cause that evidence of *a* crime would be found in the place to be searched (emphasis added). See Gates, 462 U.S. at 238; Grant, 490 F.3d at 631; Warford, 439 F.3d at 841. The affidavit was not required to provide probable cause to believe that evidence of each of numerous crimes suggested by X would be found in the home. The court finds that the information provided by X was reliable and provided probable cause to believe that evidence of Mr. Running Shield's possession of firearms would be found in the home. That is sufficient.

### 3.    Whether the Information Provided By X Was Stale

Finally, pointing to the fact that the last time X was in Mr. Running Shield's home was some eight months prior to the search warrant being issued,

Mr. Running Shield argues that the information she provided was stale. Because of how old the information was, Mr. Running Shield argues that X's information could not provide probable cause to support the issuance of the search warrant.

Stale information cannot provide probable cause to support a search warrant, but there is no bright-line test for determining when information is stale.  United States v. Stachowiak, 521 F.3d 852, 856 (8th Cir. 2008) (citing United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993)).  "Simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit is not sufficient."  Id. (citing Koelling, 992 F.2d at 822) (citing United States v. McCall, 740 F.2d 1331, 1336 (4th Cir. 1994)).  "Time factors must be examined in the context of a specific case and the nature of the crime under investigation."  Id.

In the Stachowiak case, where a known confidential informant provided information that was one month old at the time the search warrant was applied for that the defendant had been observed in possession of a firearm and that he was selling one and one-half pounds of methamphetamine a day, the court found that the information was not stale.  Stachowiak, 521 F.3d at 856; see also United States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001) (holding that information a month old about a drug transaction was not stale information in light of the ongoing nature of the crime).

Whether the information is stale depends upon the subject matter of the information.  With drugs, that can easily be sold, used, or otherwise dissipated, the time line for staleness is much shorter unless there is also a long-standing history of drug possession or drug dealing.  United States v. Kennedy, 427 F.3d 1136, 1142 (8th Cir. 2005) (citing United States v. Smith, 266 F.3d 902, 904-05 (8th Cir. 2001); Hartje, 251 F.3d at 775; United States v. Formaro, 152 F.3d 768, 771 (8th Cir. 1998)).  Information about the possession of firearms is subject to a much longer time line for staleness than the possession of drugs.

The Eighth Circuit has concluded that several-months-old information that someone illegally possessed a firearm was not stale because "individuals who possess firearms tend to keep them for long periods of time."  United States v. Neal, 528 F.3d 1069, 1074 (8th Cir. 2008) (citing United States v. Kennedy, 427 F.3d 1136, 1142 n.5 (8th Cir. 2005)).  In the Neal case, evidence about a defendant's possession of firearms was not stale where it was two months old.  Neal, 528 F.3d at 1074.

In United States v. Perry, an informant told a sheriff's deputy that a man named "Porter" had killed a woman at Porter's rental residence eight months earlier with a sawed-off .22 caliber rifle.  United States v. Perry, 531 F.3d 662, 663 (8th Cir. 2008).  Porter rented his residence from defendant Perry.  Perry, 531 F.3d at 663.  The informant told the deputy that the firearm Porter had

used in the homicide could be found at Perry's residence.  Id. at 664.  The

informant showed the deputy both Porter and Perry's homes.  Id.[2]

On appeal, Perry argued that the informant's information could not

provide probable cause for the search warrant because it was stale.  Id. at 666.

The Eighth Circuit did not directly address this issue, but held instead that the

information was not so obviously stale that a reasonable officer could not have

believed in the validity of the search warrant under the Leon good-faith

exception.  Id. at 666-67.  The court noted that other evidence from the

homicide had been retained by Porter or Perry, thus bolstering the reasonable

belief that the firearm was also retained.  Id.

In United States v. Maxim, the court held that information that was four

months old regarding a defendant's possession of a firearm was not stale.

United States v. Maxim, 55 F.3d 394, 397-398 (8th Cir. 1995).  The court held

that survivalists and firearms enthusiasts often retain their weapons for long

periods of time.  Maxim, 55 F.3d at 397; see also United States v. Humphrey,

140 F.3d 762, (8th Cir. 1998) (holding information in support of search

warrant for a rifle and other missing contents of a vehicle was not stale where

it was provided eight months after the owners of the vehicle disappeared, and

_____

[2]The opinion recites that the informant's information was reliable
because he had provided reliable information to law enforcement on three other
occasions, and because he provided great detail about the events leading up to
the homicide, the homicide itself, and the events which happened afterward.
Id. at 463.

an informant had supplied information that defendant had possession of the title to the victims' vehicle seven months before the search warrant was issued and one month after the victims disappeared).

Here, the information X provided was somewhat dated. Clearly, the information as to the drug dealing was stale. X provided no evidence of an on-going or long-standing drug distribution practice in the Running Shield residence. There were no other more-recent reports of drug activity at Mr. Running Shield's home and no controlled buys. Without more, the evidence X provided about marijuana being sold out of the Running Shield home was too old to provide probable cause for the search of evidence of drug crimes alone. The court notes that Mr. Running Shield is not charged with a drug crime in the indictment in this case.

The information about the sexual assault was also stale. The assault itself occurred far too long in the past for police to expect that they would find evidence (DNA evidence, items of X's clothing, etc.) at Mr. Running Shield's home. Again, Mr. Running Shield is not charged with sexual assault in this case.

However, the evidence of the *video* of the sexual assault was not stale. Like evidence of computer child pornography, digital electronic data evades the best efforts of persons who try to eradicate it. Forensic experts can usually discover and retrieve even digital information that has long been deleted. For

that reason, the Eighth Circuit has held that computer child pornography information does not become stale for many, many months.  See United States v. Lemon, 590 F.3d 612, 614 (8th Cir. 2010) (eighteen-month old information about child pornography being traded by defendant on the computer not stale); United States v. Rugh, 968 F.2d 750, 754 (8th Cir. 1992) (sixteen-month old child pornography information not stale for purposes of Leon good-faith exception).

In addition, the court finds that the information about Mr. Running Shield's possession of firearms was not stale.  First, it was a first-hand observation by X.  It was detailed as to the number of firearms (3) and the location where they were stored.  And, as the Eighth Circuit has observed, owners of firearms tend to hold onto them.  Neal, 528 F.3d at 1074; Perry, 531 F.3d at 666-67; Maxim, 55 F.3d at 397-398.  In addition, as discussed above, the suspicion that Mr. Running Shield had, in fact, continued to hold the weapons X knew about is bolstered by the fact that Mr. Running Shield was attempting to intimidate X through the distribution of the sexual assault video. If Mr. Running Shield no longer possessed the firearms, there would be no reason to continue to try to intimidate X.  Thus, it was reasonable to suspect that Mr. Running Shield continued to possess the firearms.

In addition, the court notes that the Eighth Circuit has recognized the role of firearms in protecting drugs, drug proceeds, and drug transactions:  the

distribution of controlled substances often goes hand-in-hand with the use and possession of firearms.  See United States v. Saddler, 538 F.3d 879 (8th Cir. 2008); United States v. Smith, 535 F.3d 883, 885 (8th Cir. 2008).  X's statement that Mr. Running Shield was distributing marijuana and that he possessed firearms share a certain nexus.  In addition, X recited that the marijuana and the guns were all stored in the same location–the crawl space near the bathroom.[3]

As with the reliability of the informant, it is not necessary that all the evidence as to each potential crime meet the staleness test.  Since it is incumbent upon the issuing court to ensure that there is probable cause to find evidence of "a" crime, it is enough to ensure that the evidence in support of the firearm offense is not stale.  The court concludes that both the evidence related to firearms possession and the evidence related to the video were not stale.

---

[3]The search warrant inventory does not recite whether the guns and the drugs discovered in the search were located in the same spot.  If they were in the crawl space together, the court notes that even though probable cause may have been lacking for the issuance of a search warrant for drugs, the plain view doctrine would support their admission at trial.  It has long been settled law that if law enforcement enters pursuant to a warrant "to search a given area for specified objects, and in the course of the search come across some other article of incriminating character" that is in plain view, the police may seize that item, even though it was not listed on the search warrant.  See Coolidge v. New Hampshire, 403 U.S. 443, 465-466 (1971).

## 4.     Totality of the Circumstances

The court has discussed individually each flaw in Agent Hooper's affidavit as asserted by Mr. Running Shield.  However, the test for whether a search warrant was supported by probable cause is the totality of the circumstances.  <u>Grant</u>, 490 F.3d at 631.  Therefore, the court makes an additional inquiry given the totality of the flaws asserted.

X was wrong about the house number on Mr. Running Shield's house, the information she provided about his alleged drug dealing was stale, and the information she provided about the sexual assault allegedly perpetrated on her by Mr. Running Shield and his possession of a video of the assault were not corroborated.  Is this enough to destroy probable cause for the affidavit?  The court concludes that it is not.

As discussed above, X's description of the firearms was reliable because it was a first-hand observation, the description was detailed as to the number of firearms and their location within the house, and because Agent Salazar met face-to-face with X, knew X's name, and had the opportunity to make a first-hand judgment as to X's reliability.  Also, Agent Hooper corroborated X's statement of Mr. Running Shield's status as a convicted felon.  And the <u>Water</u> opinion served to verify Mr. Running Shield's house number as well as his propensity in the past to take possession of firearms.  Finally, X's physical description of the appearance of Mr. Running Shield's home was corroborated by Agent Hooper's viewing of the home and by two photographs.  Furthermore,

24

although dated, X's assertion that Mr. Running Shield continued to possess firearms was likely both because persons who obtain firearms tend to retain them, and because he was attempting to intimidate X so that she would not tell law enforcement that he had guns.

Therefore, based on the totality of circumstances, including the totality of flaws in the affidavit as asserted by Mr. Running Shield, the court concludes that Agent Hooper's affidavit "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime [would] be found' " in Mr. Running Shield's house. <u>Gates</u>, 462 U.S. at 238; <u>Grant</u>, 490 F.3d at 631; <u>Warford</u>, 439 F.3d at 841. The court rejects Mr. Running Shield's argument that probable cause was lacking.

## C.     Application of the <u>Leon</u> Good Faith Exception

Even if an affidavit in support of a search warrant fails to provide probable cause for the issuance of the search warrant, the fruits of the search will not be suppressed if the officer who executed the search warrant relied upon that warrant in objective good faith. <u>United States v. Ross</u>, 487 F.3d 1120, 1122-1123 (8th Cir. 2007) (citing <u>United States v. Leon</u>, 468 U.S. 897, 921, (1984)). As an alternative to its argument that the search warrant was supported by probable cause, the government asserts that the <u>Leon</u> good-faith exception to the warrant requirement applies in this case.

"When assessing the good faith of the officers, [the court] look[s] to the totality of the circumstances, including any information known to the officers,

but not included in the affidavit." United States v. Rodriguez, 484 F.3d 1006, 1011 (8th Cir. 2007).  The question is whether a reasonably well-trained officer would have known that the search was illegal despite the issuing judge's authorization.  Hudspeth, 525 F.3d at 676.

In United States v. Pruett, the Eighth Circuit held that minor errors in the warrant application did not invalidate the officers' good faith reliance on the warrant.  United States v. Pruett, 501 F.3d 976, 979-80 (8th Cir. 2007), vacated and remanded on other grounds, 552 U.S. 1241 (2008).[4]  The warrant application misspelled the defendant's last name and stated that the house to be searched was on the west side of the street, when the house was really on the east side of the street.  Pruett, 501 F.3d at 981.  However, the warrant itself listed the correct street address for the house to be searched and included a photograph of the house to further ensure that the officers executed the warrant at the correct location.  Id. at 982.

The facts in Pruett are similar to the facts here.  While X recited the wrong house number, Agent Hooper's affidavit and the search warrant itself recited the correct house number.  In addition, there was a detailed physical description of the house and two photographs of it.  The information regarding Mr. Running Shield's alleged drug activity was stale, but the information about

---

[4]The Supreme Court vacated the holding in Pruett as to what constitutes "use" of a firearm during a drug trafficking crime.  Pruett v. United States, 552 U.S. 1241 (2008).

his possession of firearms and the existence of the digital video of the sexual assault were not stale. The court finds that, on these facts, a reasonable officer could have had an objective good-faith belief in the validity of the search warrant.

Mr. Running Shield did not file a reply brief, so he did not respond to the government's argument based on the Leon good-faith exception. Nevertheless, the court takes it upon itself to examine the argument more closely. The Leon good-faith exception does not apply in four circumstances: (1) where the affidavit in support of the search warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," (2) when "the issuing magistrate wholly abandoned his judicial role," (3) when the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid," and (4) when the issuing magistrate was misled by false information in an affidavit that the affiant knowingly or recklessly included. Pruett, 501 F.3d at 980 (citing Leon, 468 U.S. at 923 (internal citations omitted)); Ross, 487 F.3d at 1122.

There is no evidence before the court that could support the conclusion that any of these exceptions to the Leon exception apply. In finding probable cause supported the issuance of the warrant in this case, the court necessarily rules out the two exceptions for facial invalidity and invalidity due to lack of reasonable indicia of probable cause.

In determining whether a magistrate has wholly abandoned his judicial role, the court looks for an "indication that the magistrate was biased or impartial, [or for] evidence of a pattern of passive, automatic issuance of warrants." Pruett, 501 F.3d at 980-81 (quoting United States v. Hallam, 407 F.3d 942, 946 (8th Cir. 2005)). The court's conclusion that the warrant was supported by probable cause also vitiates the suggestion that the magistrate in this case–this court–was biased or impartial. No evidence has been put before the court that this court has engaged in a pattern of passive, automatic "rubber stamping" of warrant requirements.

Finally, there is no evidence in the record that Agent Hooper included false information in the affidavit. Agent Hooper truthfully recited the fact that X was wrong about the house number of Mr. Running Shield's home, and then set forth abundant facts to support Agent Hooper's correct statement of the house number. The information X gave about drug activity in the Running Shield residence, while stale, does not appear to have been false. When agents executed the search warrant, they found marijuana (both loose and packaged for sale), a digital scale, tin foil squares (both with burn marks on them and unused ones), a rolled up dollar bill, photographs of drug activity, and 15 cell phones. It is unknown on this record whether any evidence of the sexual assault video was discovered as a result of the search.

The court concludes that the <u>Leon</u> good-faith exception applies to the search warrant in this case. Accordingly, the court recommends that Mr. Running Shield's motion to suppress be denied in its entirety, either based on the conclusion that the search warrant was supported by probable cause, or on the conclusion that the <u>Leon</u> good-faith exception applies.

## CONCLUSION

Based on the foregoing discussion, this court respectfully recommends that defendant Wesley Wade Running Shield's motion to suppress [Docket No. 23] be denied in its entirety.

## NOTICE OF RIGHT TO APPEAL

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)(B), unless an extension of time for good cause is obtained. <u>See</u> FED. R. CRIM. P. 59(b); 28 U.S.C. § 636(b)(1)(B). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. <u>Id.</u> Objections must be timely and specific in order to require <i>de novo</i> review by the district court. <u>See</u> <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>, 781 F.2d 665 (8th Cir. 1986).

Dated December 4, 2012.

BY THE COURT:

/s/ <i>Veronica L. Duffy</i>

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE